UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA HUTCHINSON

    Plaintiff,

v.

    Civil Action No. 10-12367

    District Judge Paul Borman
    Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Victoria Hutchinson brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on June 17, 2005, alleging disability as of October 22, 2004 (Tr. 38-45). After the initial denial of benefits, Plaintiff filed a request for an administrative hearing, held on February 4, 2008 in Detroit, Michigan. Administrative Law Judge ("ALJ") Sherwin F. Biesman presided (Tr. 245). Plaintiff, unrepresented at the time of hearing, testified (Tr. 248-262). On March 26, 2008, ALJ Biesman determined that Plaintiff was not disabled (Tr. 22). On April 30, 2010, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the administrative decision on June 15, 2010.

**BACKGROUND FACTS**

Plaintiff, born July 11,1960, was 47 when the ALJ issued his decision (Tr. 22, 38). Plaintiff completed 12th grade and worked previously in a health care position (Tr. 50, 54). She alleges disability as a result of difficulty walking and standing (Tr. 49).

### A. Plaintiff's Testimony

Plaintiff stated that she wished to proceed unrepresented (Tr. 248). She began her testimony by stating that she had been married one year earlier (Tr. 248). She reported that she worked formerly as a caregiver to Alzheimer's patients (Tr. 249). She alleged that her current health problems were the result of an October, 2004 workplace fall (Tr. 249). She reported that she currently worked at Walmart as a cashier (Tr. 250). Plaintiff testified that she was unable to stand for long periods (Tr. 251). She denied back surgery, but noted that she took medication, underwent physical and pain management therapy, and received steroid injections (Tr. 251). She reported that on a typical workday, she took Vicodin, Xanax, and a muscle relaxer (Tr. 253). She noted that she also experienced foot-dragging (Tr. 254). She acknowledged that since the 2004 accident, she had undergone numerous imaging studies (Tr. 254-254). Plaintiff reported that her most comfortable position was lying on her side with a pillow between her legs (Tr. 256). She alleged that she was able to stand for up to 20 minutes without experiencing discomfort (Tr. 256). On a scale of one to ten, Plaintiff estimated that her average pain level was an "eight" (Tr. 258).

### B. Medical Evidence

#### 1. Treating Sources

Treating notes show that Plaintiff experienced lumbosacral strain and a knee injury on October 22, 2004 (Tr. 85). Reporting back spasms, she was prescribed Vicoden, Flexeril, Motrin, and a knee brace (Tr. 99-100). In November, 2004, an MRI of the left knee was unremarkable (Tr.

163, 198). Imaging studies of the lumbar spine showed only mild degenerative changes (Tr. 203). In December, 2004, Kevin T. Crawford, D.O. found that Plaintiff could perform sedentary work as of January 3, 2005, but later revised his assessment, stating that Plaintiff could return by January 17, 2005 (Tr. 117-118). He noted that a recent MRI showed "mild to moderate disk bulging" (Tr. 165) and advised Plaintiff to treat the condition with "rest, ice, and anti-inflammator[ies]" (Tr. 115). The following month, she reported no improvement after having undergone 17 physical therapy sessions (Tr. 116). Ellen Athens, D.O. found Plaintiff "presently incapacitated" as a result of back pain (Tr. 179). In March, 2005, Tawfiq Nakhleg, D.O. advised the use of steroid injections for pain relief (Tr. 175-176). April, 2005 treating notes state that Plaintiff received only limited benefit from additional therapy (Tr. 123).

In June, 2005, Kurt Young, D.O. referred Plaintiff for a neurological assessment, stating that he did not "recommend any work activity before receiving the consult" (Tr. 216). Later the same month, neurologist Louis Jacobs, D.O. noted the absence of muscle spasms and "symetrical strength in the myotomes at L1-S1" with a "slow but unremarkable gait" (Tr. 208). He observed that "[Plaintiff's] examination unfortunately [was] fraught with nonphysiologic responses and marked inconsistencies" (Tr. 208). He advised Plaintiff to seek pain management therapy (Tr. 209). In January, 2008, nerve conduction studies of the lower extremities showed "severe" peroneal neuropathy on the right and "mild" on the left (Tr. 229).

### 2. Consultive and Non-Examining Sources

A September, 2005 Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 220). Plaintiff's postural limitations consisted of occasional balancing, stooping, kneeling, crouching, crawling, and

stair climbing with a complete preclusion on the climbing of ladders and ropes (Tr. 221). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 222-223).

### 3. Evidence Created Subsequent to the ALJ's March 26, 2008 Decision

In May, 2008, an MRI of the lumbar spine showed a central disc protrusion at L5-S1 without significant stenosis (Tr. 240). In June, 2008, N. Syed, M.D. completed an assessment of Plaintiff's work-related activities, finding that she was limited to lifting 10 pounds on an occasional basis (Tr. 234). He found further that she was limited to sitting and/or standing for a "few minutes" in an eight-hour workday (Tr. 235). He opined that Plaintiff was restricted to frequent (as opposed to *constant*) manipulative activity and the occasional use of foot controls (Tr. 236). Plaintiff was deemed able to perform postural activities, *i.e.* climbing, balancing, stooping, kneeling, crouching, and crawling on an occasional basis (Tr. 237).

### C. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Biesman found that while Plaintiff experienced the severe impairments of degenerative disc disease of the lumbar spine, L4-L5 disc protrusion and "minimal" foraminal and spinal stenosis, none of the conditions met or medically equaled one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18-19). The ALJ determined that although Plaintiff was unable to perform her past relevant work, she had the Residual Functional Capacity ("RFC") for a full range of sedentary work[1] (Tr. 19).

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The ALJ found Plaintiff's allegations of limitation "not credible to the extent they [were] inconsistent with the [above] residual functional capacity assessment" (Tr. 20). He noted that Plaintiff currently worked as a cashier at Walmart (Tr. 20). He found that although Plaintiff took pain medication daily, she answered questions "alertly and appropriately" at the hearing (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

-5-

of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."  *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Treating Physicians' Analyses

Plaintiff argues that the ALJ's "treating physician" analyses were both procedurally and substantively deficient.  *Plaintiff's Brief* at 9-11.  Specifically, she contends that the ALJ erred by failing to discuss the results of Dr. Syed's January, 2008 nerve conduction studies.  Referencing Dr. Syed's June, 2008 assessment of her work-related abilities (Tr. 234-239), Plaintiff asserts that "[t]he ALJ never even attempts to dispute or disqualify the opinions of Dr. Syed in his opinion." *Id.* at 10. Likewise, she contends that Drs. Liem's and Young's assessments were entitled to controlling weight.  *Id.* at 11 (*citing* Tr. 20-21).

Provided that the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263,

266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)).  Further,

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

*Wilson,* at 544.

Plaintiff's argument that the ALJ erred in omitting mention of Dr. Syed's January, 2008 nerve conduction studies is unavailing.  First, the administrative opinion includes an adequate summation of the treating records; he was not required to discuss every scrap of evidence.  *Kornecky v. Commissioner of Social Security,* 2006 WL 305648, *8-9 (6th Cir. 2006)(*citing Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999))("While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party").  Further, although Dr. Syed was arguably a "treating physician," the pre-decision transcript contains only the results of the nerve conduction exam absent any opinion or conclusion regarding Plaintiff's residual abilities. Plaintiff attempts to "piggyback" Dr. Syed's June, 2008 assessment onto the January, 2008 nerve conduction studies.   However, she provides no good reason for failing to procure the June, 2008 assessment before the ALJ's March 26, 2008 decision.  As such, the Court cannot consider the June, 2008 findings in determining whether Plaintiff is entitled to a "sentence four" remand.  *See* Sec. C, *infra*.

Moreover, the ALJ thoroughly discussed Dr. Liam's and Young's findings and his reasons for rejecting them. He noted that the opinions stood at odds with Plaintiff's conservative treatment (Tr. 21). In rejecting the "disability" opinions, he cited Dr. Jacobs finding that Plaintiff's subjective complaints of pain were suspect (Tr. 19 *citing* 208). Finally, the ALJ noted that although Plaintiff alleged disability level limitations, her claims were undermined by the fact that she continued to work 30 hours each week as a cashier (Tr. 20). *See Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)(In the presence of contradicting substantial evidence, rejection of the treating physician's findings is permissible).

### B. The RFC

Plaintiff also argues that the ALJ's RFC failed to account for her full degree of limitation. *Plaintiff's Brief* at 11-13. She disputes the finding that she could perform a full range of sedentary work, asserting that side effects from Tylenol #3, Vicodin, Motrin 800, and various other pain medications were not considered. *Id.* at 12. She contends further that the ALJ did not consider the frequency of her treatment in discounting her disability claim. *Id.* at 12-13.

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account." *Id.* (*citing* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(RFC must be based on all relevant evidence).

Contrary to Plaintiff's argument, the ALJ's RFC is well explained and well supported. Giving Plaintiff the benefit of the doubt, the ALJ broke with the state assessor's conclusion that she was capable of exertionally light work (Tr. 220) finding instead that she was limited to only

-8-

sedentary jobs (Tr. 19). Plaintiff, stating erroneously that the ALJ did not consider her *exertional* limitations, apparently meant to argue that the ALJ ignored her *postural* limitations in the RFC (Tr. 221). However, the fact that Plaintiff's postural limitations (as found by the State assessor) were omitted from the RFC is of no import. Pursuant to SSR 85-15, the ability to perform only *occasional* balancing, stooping, kneeling, crouching, crawling, and stair climbing (along with a proscription on all ladder and rope climbing) is not incompatible with the ability to perform a full range of sedentary work. *Id.*, 1985 WL 56857, *6-7.

Plaintiff also asserts that the ALJ did not consider her medication side effects in crafting the RFC. However, the ALJ supported the RFC by noting that at the hearing, Plaintiff's "thought did not seem to wander and all questions were answered alertly and appropriately," again observing that she was currently working 30 hours a week at Walmart (Tr. 20). Plaintiff also contends that the ALJ erred by failing to discuss her frequency of treatment in assessing credibility. SSR 96-7p. This argument is also without merit. Under SSR 96-7p, the ALJ was required to consider "treatment for pain relief aside from medication" along with six other factors in assessing her credibility. 1996 WL 374186, *4. He complied with the Regulation by observing that Plaintiff received only "limited and conservative treatment"[2] (Tr. 21). As such, the deference generally allotted the ALJ's credibility determination and RFC is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).

---

[2] Moreover, the ALJ is not obliged "to slavishly discuss each of the factors listed in SSR 96-7p" provided that the credibility analysis contains adequate reasons, supported by substantial evidence for rejecting the claimant's allegations. *Ingle v. Astrue,* 2010 WL 5070766, *6 (D.N.H. 2010). *See also Bunton v. Astrue*, 2011 WL 1322895, *4 (E.D.Okla.2011)(citing *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000))(ALJ "not required to perform a 'formalistic factor-by-factor recitation of the evidence'")(internal punctuation omitted).

**C. Sentence Six Material**

Plaintiff arguments incorporate medical evidence submitted after the March 26, 2008 administrative decision. The Court construes the use of this material as a request for a "sentence six" remand.

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id*. at 695–96. Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, *but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g). *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir.2006).

The "sentence six" material, consisting of a May, 2008 MRI of the lumbar spine (Tr. 240) and a work related activity assessment by Dr. Syed (234-239) are "new." However, because they pertain to Plaintiff's condition *after* March 26, 2008, they are immaterial to the present determination. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). If Plaintiff believes that her condition has deteriorated since the time of the decision, the proper remedy is to initiate a new claim for benefits. *Id.* at 712.

Additional reasons exist for declining to grant a sentence six remand. Plaintiff has not provided good cause for failing to procure a work-related assessment until after the administrative decision. The mere fact that the records had not been created until after March 26, 2008 does not constitute good cause. To the contrary, it appears that Dr. Syed's June, 2008 was improperly submitted as a "rebuttal" to the ALJ's decision. "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky. 2009)(*citing Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991)).

Substantively speaking, even assuming that Plaintiff had complied with the procedural requirements for a sentence six remand, the newer material would be unlikely to result in a reversal of the ALJ's earlier decision. The May, 2008 MRI, compared to earlier imaging studies, does not suggest that Plaintiff's condition is worsening. Likewise, Dr. Syed's extreme finding that Plaintiff could stand or sit for only minutes at a time over the course of an eight-hour work day is flatly contradicted by her self-acknowledged ability to hold a 30-hour per week job as a cashier.

In closing, I note that the transcript supports the finding that Plaintiff experienced some degree of limitation. As such, my decision to uphold the ALJ's findings should not be read to trivialize her documented limitations. Nonetheless, the ALJ's determination that the Plaintiff was capable of a full range of sedentary work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: May 16, 2011

**CERTIFICATE OF SERVICE**

I hereby certify on May 16, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on May 16, 2011: **None.**

>s/Michael E. Lang
>Deputy Clerk to
>Magistrate Judge R. Steven Whalen
>(313) 234-5217